IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,925

STATE OF KANSAS,
*Appellee*,

v.

BRIAN C. SHIELDS,
*Appellant.*

SYLLABUS BY THE COURT

1.

K.S.A. 2020 Supp. 22-3210(d)(2) permits a district court to allow a defendant to withdraw a plea and set aside the judgment of conviction on a showing of manifest injustice. When assessing whether manifest injustice exists, courts generally consider three nonexclusive factors: (a) whether the defendant was represented by competent counsel; (b) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (c) whether the plea was fairly and understandingly made.

2.

Appellate courts review a district court's decision to deny a postsentencing motion to withdraw a plea for an abuse of discretion. On appeal, the movant bears the burden to prove the district court's error.

3.

When a postsentence motion to withdraw a plea alleges ineffective assistance of counsel, the constitutional test for ineffective assistance must be met to establish manifest injustice. That test asks: (a) whether the attorney's performance fell below an objective

standard of reasonableness; and (b) whether there is a reasonable probability that, but for the attorney's error, the result of the proceeding would have been different.

Appeal from Neosho District Court; DARYL D. AHLQUIST, judge. Opinion filed March 4, 2022. Affirmed.

*Forrest A. Lowry*, of Ottawa, was on the brief for appellant.

No appearance by appellee.

The opinion of the court was delivered by

BILES, J.: Brian C. Shields appeals the district court's denial of his postsentencing motion to withdraw his no contest plea to first-degree felony murder. He argues he did not fairly and knowingly enter the plea because his attorney provided ineffective representation by not giving him enough time to review the plea agreement and by withholding discovery materials. After an evidentiary hearing, the court found Shields failed to show the statutorily required manifest injustice. See K.S.A. 2020 Supp. 22-3210(d)(2). We affirm.

We hold Shields has not met his burden to establish the district court abused its discretion. See *State v. Hutto*, 313 Kan. 741, 745, 490 P.3d 43, 47 (2021). His arguments rely on his version of the conflicting evidence, and appellate courts cannot reweigh that evidence. See *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). The district court's decision is supported by substantial competent evidence that includes the plea agreement he executed, his own statements at the plea hearing, and the testimony received from Shields and his trial counsel at the plea withdrawal hearing.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Shields with first-degree felony murder with two underlying felony crimes: aggravated arson and aggravated burglary. It alleged Shields and his then-girlfriend entered a Chanute home in 2013 to retrieve items they believed had been stolen from the girlfriend. Shields lit a homemade explosive that set a mattress on fire and burned the house down. Weeks later, those clearing the debris found Cristy Wiles' body. An autopsy concluded she died from smoke inhalation. Shields at first pled not guilty.

*Shields' plea agreement*

On the day of the pretrial conference, and just a few days before trial, the parties resolved the pending case and an unrelated drug prosecution. The agreement was for Shields to plead no contest to one count of first-degree felony murder, with a joint recommendation for a life sentence with possibility of parole after 20 years. In the drug case, Shields would plead no contest to one count of possession of methamphetamine with intent to distribute, with a recommended 51-month prison sentence consecutive to the hard 20 murder sentence. The State also agreed to recommend to other prosecutors against new charges being filed at the state and federal levels in Kansas and Missouri relating to his absence from community corrections and the actions he was pleading guilty to. The State further agreed to dismiss a pending motion to revoke Shields' assignment to community corrections. This concession would allow Shields to receive credit for time served there against the murder and drug sentences.

Shields executed a written plea agreement setting out these terms. It included a "Certificate of Counsel" signed by Shields' attorney, Kerry Holyoak, and the Neosho County Attorney. The signed agreement includes the following affirmations by Shields:

3

• "I have reviewed the [complaints]. I have reviewed the sentencing guidelines for [the drug distribution case] and the possible sentences for the off-grid offense for [the murder case]. I have discussed at length with my lawyer the evidence against me before deciding how to enter my pleas herein. I fully understand the charges brought against me. I also understand the possible penalties for my conviction in each case."

• "I have reviewed the investigation reports and witness statements for each case and have told my lawyer all the facts and circumstances regarding the charges brought against me and have submitted to a contested preliminary hearing for both cases and have reviewed the transcript for the same. I believe that my lawyer is fully informed on all such matters."

• "My lawyer has counseled with and advised me on the nature of each charge, on all lesser included charges with possible penalties, and on all possible defenses that I might have."

• "I have had enough time to confer with my lawyer and believe that he has done all that anyone could do under the circumstances to counsel and assist me. I AM SATISFIED WITH THE ADVICE AND HELP HE HAS GIVEN ME."

When the parties presented the court with their agreement, Holyoak described its terms and Shields agreed this description matched his understanding. Shields acknowledged signing the written plea agreement and told the court he had all the time he believed necessary to discuss it with his attorney. Holyoak agreed, noting he corresponded with Shields, sent him copies of the preliminary hearing transcript and discovery, met with him at the jail "on several occasions," and reviewed possible defenses and discovery to reach the decision to enter this plea. Shields told the court he was satisfied with Holyoak's representation and was "well aware" of the circumstances and the agreement's terms.

4

The court found Shields able to make a knowing and intelligent waiver of his rights. It reviewed with him the rights relinquished by the plea. Shields again agreed he understood and made the plea decision freely, voluntarily, and with his counsel's advice. The State then recited its factual basis for the pled-to charges, and Holyoak agreed there was a reasonable likelihood of conviction at trial. Shields pled no contest to first-degree felony murder and possession of methamphetamine with intent to distribute.

The court again solicited Shields' acknowledgment that these pleas were made freely, knowingly, voluntarily, and with counsel's advice. Shields denied any promises or coercion influenced him to enter the pleas and recognized the sentencing recommendations were not binding. The court accepted the pleas and found him guilty of both offenses.

At sentencing, the court followed the plea agreement and sentenced Shields to a hard 20 sentence for the murder conviction and a consecutive 51 months' imprisonment for the drug conviction. Shields filed a short-lived notice of appeal, but it was dismissed and the mandate issued.

*Shields' effort to withdraw his pleas*

In a letter postmarked about 11 months after the appellate mandate, Shields asked the district court for a new trial. The court construed this as a motion to withdraw plea and appointed new counsel, who was the first in a string of attorneys appointed for Shields who later withdrew. It was not until almost three years later that a formal plea withdrawal motion was filed on Shields' behalf.

During that interim, this court indefinitely suspended Holyoak from the practice of law for misconduct unrelated to Shields' case, mainly from Holyoak's tactics in

5

negotiating the sale of his own mineral rights with a prospective purchaser, and his nonlawyer wife's participation in his law practice. See *In re Holyoak*, 304 Kan. 644, 372 P.3d 1205 (2016). Seizing on this, the plea withdrawal motion alleged Holyoak "failed to provide and review with [him] available discovery, and deceived and misled [him] . . . by statements made to [him] and assertions in the plea petition drafted thereby which Mr. Holyoak requested Defendant sign." Shields claimed Holyoak did not provide him with discovery including "inconsistent exculpatory statements" by the former girlfriend; "video and DVD/CD statements by all State witnesses; all photos; the toxicology report and portions of the autopsy report, and evidence of false statements by" several State witnesses. Shields also alleged Holyoak misled him by falsely claiming he had shared all discovery. He asserted he did not "review and know or understand all the [S]tate's evidence and all terms of the plea agreement or consequences of the plea."

The State moved to dismiss the motion as untimely. A new attorney was appointed for Shields, who filed a response to the State's motion and a "Second Amended Motion to Withdraw Plea and For Trial," which alleged manifest injustice arose because:

"a.     Defendant's trial attorney, Kerry D. Holyoak, introduced his wife as an attorney, when she was in fact not an attorney.

"b.     Defendant was told that Mr. Holyoak's wife was an experienced international attorney and had previously worked in Hong Kong.

"c.     Defendant was counseled at the Neosho County Jail by Kerry Holyoak's wife in matters regarding his legal defense.

"d.     Defendant's trial attorney has been indefinitely suspended from the practice of law for conduct in other matters that was occurring at the same time as defendant's representation.

6

"e. Defendant's attorney engaged in the same tactics and conduct described in the suspension order in *In re Holyoak*, Docket No. 114[,]836, namely, to wit:

i. Defendant's [*sic*] wife represented herself as an attorney and was not licensed or supervised by Mr. Holyoak. . . .

ii. Defendant's attorney engaged in 'fraud and misrepresentation' regarding the nature and quality of the evidence against Defendant by withholding specific portions of discovery to have defendant plead to the charges. . . .

"f. Defendant's decision to plea was materially influenced by the unqualified counsel of a non-licensed attorney.

"g. Defendant was never provided a complete copy of the discovery and was unable to make a qualified decision regarding the quality of evidence that was to be presented against him.

"h. Defendant was misled by his attorney as to the quality and nature of the testimony of co-defendant . . . [Shields' former girlfriend] by his attorney.

"i. Defendant was led to believe by his attorney that his decision to plead in his case would materially impact and mitigate charges against his mother[.]

"j. Defendant was never appropriately counseled as to the definition and effect of concurrent and consecutive sentences by his attorney."

The State did not pursue its argument for dismissal. The court conducted an evidentiary hearing on the motion to withdraw plea at which both Shields and Holyoak testified.

7

Shields said he met Holyoak and his wife at the jail shortly after Holyoak was appointed. During that visit, he claimed he mostly reviewed things with Holyoak's wife. According to Shields, Holyoak's wife told him: she would be helping with the case; she used to be a trial attorney in Hong Kong; all the witness statements were hearsay that should be excluded; and if the former girlfriend did not change her initial statement that Shields was not involved in the crime, the Holyoaks did not see grounds to charge him with anything. He said this was the only time he met with Holyoak except for a few brief visits before court dates.

Later, Shields said, attorney Holyoak told him the former girlfriend changed her statement, and he recommended a plea deal. Shields testified he never saw her revised statement. On cross-examination, Shields admitted that what he alleged Holyoak's wife told him did not have "anything to do with why I entered my plea."

As for the plea agreement, Shields said: Holyoak told him he would draft it and they would review it together, but instead Holyoak gave it to him outside the courtroom and he did "not [have] even five minutes to look it over . . . it wasn't really even gone over with me." Shields also testified: he did not understand everything in the agreement, though he acknowledged he had said otherwise at the plea colloquy; he did not know then there was discovery he had not seen, which "left some spots out that I would have asked questions to"; and that "I wasn't aware that I would have to go in front of a parole board in order to get parole, or else I never would have took the plea to begin with." Shields alleged Holyoak did not explain the difference between concurrent and consecutive sentences.

Overall, Shields said he did not feel Holyoak did a good job for him. He felt like "it was rushed," and that "Holyoak wasn't really trying to look through anything." He said he did not receive all the discovery and had not seen the items identified in his motions.

8

Holyoak testified he believed he met with Shields at the jail several times and at the courthouse before and after court hearings. He recalled bringing his wife to the jail on a Saturday to prepare for trial. At the time, she was his paralegal and assistant. He denied telling Shields she was a lawyer, though he admitted she told Shields she had been a paralegal doing trial preparation for a British law firm in Hong Kong. He said he brought her along because of the discovery volume. He said his wife would not have been able to influence Shields to take a plea bargain from what he observed.

Holyoak also said that after the former girlfriend decided to testify against Shields he watched the video of her statement with Shields at the courthouse in Erie. Holyoak said her statement, which he assessed as "fairly believable," was part of what persuaded him to recommend the plea. He said he "had gone over all the . . . other witness statements, police reports, photographs, all of it with him. And then we sat and listened to that and watched it."

Holyoak testified "it would not be accurate" to say he went over the plea agreement with Shields for only five minutes, but rather that they "went through things just point by point, line by line, document by document." He said Shields did not want some of the case materials at the jail because he did not trust other inmates, so he brought all the material with him and spent several hours going through it because Shields did not want to take it back to his cell. Holyoak also noted Shields had the chance to see and go over the autopsy report—an item Shields specifically claimed not to have seen in full. And finally, Holyoak said he recalled discussing the difference between concurrent and consecutive sentences with Shields.

*The district court's denial of the plea withdrawal motion*

After hearing the testimony, the court directed the parties to prepare competing findings of fact and conclusions of law, but ultimately did not adopt either party's proposals. In its written order, the court denied the motion after concluding Shields failed to show a manifest injustice.

On the allegations about Holyoak's wife, the court found Shields' decision was "not materially influenced by any legal advice allegedly given to him by Ms. Holyoak." On the remaining claims, the court first recounted Shields' assertions of inadequate time to consult with Holyoak and inadequate understanding of the plea agreement's terms. Then, the court summarized Shields' and Holyoak's conflicting testimony about whether evidence was withheld from Shields; whether he was misled about the content of the former girlfriend's testimony; and whether the difference between concurrent and consecutive sentences was explained to him. It noted Shields did not rebut Holyoak's testimony that Shields requested discovery not be sent to the jail or his testimony that he watched the former girlfriend's interview with Holyoak at the courthouse. Otherwise, the court did not make more detailed findings resolving specific facts in favor of one witness account or the other.

But after making these observations, the court found that at the time of his plea, Shields had "extensive experience with the criminal justice system," and that he "received a favorable plea bargain." Then, in a section designated "conclusion," the court wrote,

> "The testimony presented in this matter are very much polar opposites. The movant complains that Mr. Holyoak did little of anything right and spent little time in his defense. Mr. Holyoak, on the other hand, presents himself as a competent and diligent attorney who did everything right in the defense of his client. The truth is probably somewhere between the two extremes. This court has reason to question the complete

10

veracity of both the defendant and his counsel. That said, after an objective review of the testimony, available transcripts, and documentation, the Court finds:

1. That the defendant was represented by competent counsel who had been actively practicing law, including criminal law, for over 20 years.

2. That the evidence presented does not establish that the defendant was misled, coerced, mistreated, or unfairly taken advantage of.

3. That the pleas entered by the defendant were fairly and understandably [*sic*] made and with knowledge of the consequences of his pleas.

4. Additionally, the current issues weren't raised in the defendant's direct appeal; the defendant had extensive prior experience in the criminal justice system, and the defendant received at least a marginally favorable plea agreement."

Shields appealed. The State did not timely file a response brief, although it obtained several extensions of time to do so. We denied the State's motion to file a brief out of time after this appeal was set on the court's summary calendar.

Jurisdiction is proper. See K.S.A. 2020 Supp. 22-3601(b)(3) (listing criminal cases permitted to be taken directly to Supreme Court, including life sentence and off-grid crime conviction); K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 2020 Supp. 22-3601).

ANALYSIS

Shields argues the district court erred by denying his plea withdrawal motion, claiming: (1) he did not have adequate time to review the plea agreement, and (2) he did not have the chance to review all the evidence against him before entering the plea. But

11

these contentions go against the district court's factual findings that are supported by substantial competent evidence that we cannot reweigh. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). Shields essentially asks this court to believe his side of his story.

*Standard of review*

A district court's decision to deny a postsentencing plea withdrawal motion is reviewed for an abuse of discretion. *Hutto*, 313 Kan. at 745. A district court abuses its discretion when its decision is based on an error of law or fact or unreasonable. Appellate courts give deference to the trial court's findings of fact. *Johnson*, 307 Kan. at 443.

*Discussion*

A court after sentencing may set aside the judgment of conviction and permit a defendant to withdraw a plea to correct manifest injustice. K.S.A. 2020 Supp. 22-3210(d)(2). When assessing whether manifest injustice has been shown, courts generally consider three factors gleaned from *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006): "'(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.'" *Johnson*, 307 Kan. at 443. A district court may consider other relevant factors, and the defendant need not show that all the factors apply in his favor. *Johnson*, 307 Kan. at 443. Inherent in the manifest injustice requirement is that the context of the plea agreement "was obviously unfair or shocking to the conscience." *Hutto*, 313 Kan. at 745.

In this appeal, Shields intermingles the three *Edgar* factors to argue Holyoak was ineffective and misled him to the extent his plea was not fairly and understandingly

12

made. He asserts the court erred in giving "too much deference to Mr. Holyoak's testimony" and in seemingly "ignor[ing] most of defendant's testimony." But while Shields' testimony supports these factual arguments, Holyoak's testimony refutes them. And the court found the plea was "fairly and understand[ing]ly made with knowledge of the consequences," after considering all the arguments and evidence.

> "'The question of whether a plea is understandingly made must be weighed in light of certain constitutional and statutory requirements which attach to a defendant's plea. United States constitutional due process requirements relating to pleas of guilty or nolo contendere were imposed upon the States in *Boykin v. Alabama*, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). To be constitutionally valid, guilty pleas and their resulting waiver of rights "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."' [Citation omitted.]" *State v. Adams*, 311 Kan. 569, 575, 465 P.3d 176 (2020).

The record contains substantial competent evidence that Shields understood the plea agreement's terms and knew its consequences before he entered into it. Shields affirmed this at the plea hearing. And Holyoak refuted Shields' later claim that they only spent five minutes reviewing the agreement. Shields also executed the agreement, which plainly stated the recommended life sentence would entail only a possibility for parole after 20 years and contained an express representation that Shields understood the possible penalties for the pled-to offenses.

Shields' representations at the plea colloquy alone provide adequate basis for the district court's conclusion. See *State v. Green*, 283 Kan. 531, 548, 153 P.3d 1216 (2007) (noting defendant's articulate colloquy at the plea hearing showed that her plea was fairly and understandingly made). And faced with his new claim that these representations were false, the district court's resolution given the conflicting testimony necessarily

13

incorporates what is "tantamount to a credibility determination" that an appellate court is "ill-suited to question," even though the district court did not make explicit findings about how much time Holyoak spent reviewing the agreement with Shields. See *Johnson*, 307 Kan. at 445.

Shields' second claim asserts Holyoak was ineffective in failing to provide him all the State's evidence, including his former girlfriend's revised statement implicating him in the felony murder.

> "'When a postsentence motion to withdraw a plea alleges ineffective assistance of counsel, the constitutional test for ineffective assistance must be met to establish manifest injustice.' That test asks: '(1) whether the attorney's performance fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different.' There is a 'strong presumption' that counsel provided '"adequate assistance"' and '"made all significant decisions in the exercise of reasonable professional judgment."' Prejudice means 'a reasonable probability that, but for the deficient performance, the defendant would have insisted on going to trial instead of entering the plea.' A reasonable probability is a '"probability sufficient to undermine confidence in the outcome."' [Citations omitted.]" *Johnson*, 307 Kan. at 447.

The district court found Shields "was represented by competent counsel" and that Shields' evidence failed to establish "he was misled, coerced, mistreated, or unfairly taken advantage of." Holyoak's representation at the plea hearing and his testimony that he reviewed all the discovery with Shields supplies substantial competent evidence to support the district court's decision that Holyoak was not ineffective in the manner Shields alleged. See *State v. Dinkel*, 314 Kan. 146, 148, 495 P.3d 402 (2021) (noting appellate courts use a mixed standard of review on ineffective assistance of counsel claims, considering whether substantial competent evidence supports the court's factual

findings and reviewing the conclusions of law de novo); *State v. Jones*, 306 Kan. 948, 959-60, 398 P.3d 856 (2017) (necessary findings presumed absent objection). And while Shields asserts generically that an attorney who fails to share all discovery with a criminal defendant could fall below the objective standard of reasonableness, he does not cite evidence to show how his outcome with his attorney would have been different but for this alleged deficiency.

At its core, Shields' claim is simply that the district court failed to give greater weight to his testimony, and that contention is outside our scope of appellate review. Shields has not shown the court erred as matter of law, based its decision on unsupported facts, or that its decision was otherwise unreasonable. We hold Shields fails to establish any abuse of discretion in denying the plea withdrawal motion.

Affirmed.