NOT DESIGNATED FOR PUBLICATION

No. 127,975

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH GRANT MCNETT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Barton District Court; CAREY L. HIPP, judge. Submitted without oral argument. Opinion filed August 22, 2025. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Ryan J. Ott*, assistant solicitor general, *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM: McNett brings this appeal seeking to withdraw his 2019 plea where he requested and received a dispositional departure to probation. Unfortunately, McNett was unable to meet the conditions of that probation, and the district court ultimately revoked his probation and imposed his underlying 49-month prison sentence. After the imposition of his underlying sentence, McNett decided he was coerced into making that plea agreement and sought to withdraw it. However, McNett failed to file his motion within the one-year time limit and failed to demonstrate excusable neglect for such failure. As such, McNett's motion is untimely, and the district court did not err in summarily denying the motion. The district court's judgment is affirmed.

1

The State charged McNett with felony possession with intent to distribute methamphetamine, felony possession of drug paraphernalia, felony possession without obtaining a drug tax stamp, and misdemeanor possession of drug paraphernalia related to events in August 2018. In March 2019, McNett pled guilty to one count of possession of methamphetamine with intent to distribute pursuant to a plea agreement. In exchange for his guilty plea, the State agreed to recommend a downward dispositional departure to probation and dismiss the remaining charges filed against him. McNett also signed a notice of his offender registration requirements under the Kansas Offender Registration Act (KORA). At the subsequent plea hearing, the district court accepted McNett's guilty plea and informed him of his duty to register as an offender, which McNett acknowledged.

At the sentencing hearing in June 2019, the district court followed the plea agreement and granted McNett a dispositional departure to an 18-month probation term with an underlying prison term of 49 months. The district court also informed McNett he was required to register for 15 years under KORA. McNett's probation did not begin until November 2020—after his release from custody in a separate matter. McNett did not file a direct appeal.

The State moved to revoke McNett's probation in September 2021 for various violations. After a hearing, the district court found McNett committed multiple probation violations including that he committed a new crime while on probation. Thereafter, the district court revoked McNett's probation and imposed his underlying 49-month prison term. After the revocation, McNett apparently realized that he regretted the plea agreement and filed a pro se motion to withdraw his guilty plea in April 2023, asserting he was coerced into agreeing to the plea agreement.

In support of the motion to withdraw his plea, McNett alleged that the State threatened to seek termination of his parental rights to his then-unborn child as well as the parental rights of the mother if he refused the plea agreement. McNett also claimed the district court and his trial counsel inaccurately informed him that he was subject to a 15-year KORA registration period rather than a lifetime registration period. Finally, McNett explained that he had failed to file the motion earlier because he contacted his counsel about withdrawing his plea after being released from custody in November 2020, but his attorney was "negative on any action I could take," which McNett believed. Therefore, McNett was somehow unable to learn of his ability to request to withdraw his plea until he was reincarcerated in October 2022 and had "access to an extensive law library."

The district court summarily denied McNett's motion as untimely, reasoning McNett's motion was filed more than four years after his guilty plea, well outside the one-year time limit, and McNett "[failed] to provide any basis for excusable neglect for failing to meet this time limitation."

McNett filed a motion to reconsider in which he generally reiterated his arguments and attempted to further explain his delay in seeking to withdraw his guilty plea:

> "After finding out my registration was lifetime, I messaged [my trial counsel]. How could I reasonably be aware of information that was in no way imparted to me at any time. Thus causing significant delay in my filing, between incarceration, and my lawyer's [*sic*] response upon me contacting him, which is discussed in said motion . . . ."

The district court denied the motion, finding "no compelling reason for reconsideration or setting aside judgment and granting withdrawal of plea."

McNett was granted the right to appeal this denial out of time.

3

McNett poses only one issue on appeal: whether the district court erred in summarily denying McNett's motion to withdraw his plea. When presented with a postsentence motion to withdraw a plea, a district court, "[t]o correct manifest injustice[,] . . . may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 22-3210(d)(2); See *State v. Shields*, 315 Kan. 131, 139, 504 P.3d 1061 (2022). However—pertinent to this case—a defendant must bring a postsentence motion to withdraw a plea within one year of the last appellate court's final order in the case.

As with most rules, there is an exception to the one-year filing deadline permitting defendants to file a postsentence motion to withdraw a plea after the one-year filing timeframe "upon an additional, affirmative showing of excusable neglect by the defendant." K.S.A. 22-3210(e)(2). Therefore, to survive summary denial, McNett must first show excusable neglect for his untimely filing and then demonstrate manifest injustice would result from not permitting the plea withdrawal. When determining whether manifest injustice exists, courts generally apply the nonexclusive *Edgar* factors and consider: "(a) whether the defendant was represented by competent counsel; (b) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (c) whether the plea was fairly and understandingly made." *Shields*, 315 Kan. 131, Syl. ¶ 1; see State *v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). However, because this list is not exhaustive, courts may consider other relevant factors, and the defendant need not show that all the factors apply in their favor. *Shields*, 315 Kan. at 139-40. "Inherent in the manifest injustice requirement is that the context of the plea agreement 'was obviously unfair or shocking to the conscience.'" 315 Kan. at 140 (quoting *State v. Hutto*, 313 Kan. 741, 745, 490 P.3d 43 [2021]).

This court reviews the district court's summary denial of a motion to withdraw a plea de novo and determines, based on the same records, files, and motion the district

court considered, whether the records conclusively show the defendant is not entitled to the relief sought. *State v. Smith*, 315 Kan. 124, 126, 505 P.3d 350 (2022); *State v. Adams*, 311 Kan. 569, 574, 465 P.3d 176 (2020) ("We exercise de novo review when there has been no evidentiary hearing because we have the same access to the motion, records, and files as the district court."). McNett bears the burden to show the district court erred in summarily denying his motion. *Hutto*, 313 Kan. 741, Syl. ¶ 1.

THE DISTRICT COURT DID NOT ERR IN SUMMARILY DENYING MCNETT'S MOTION

At the outset, this court must address the State's argument that McNett failed to address the excusable neglect necessary to warrant any review of his untimely filing in his motion—and thus failed to properly preserve his claim for this court's review. As McNett points out, the State's argument focuses on the words used rather than the argument made. This court's review is not limited by titles and magic words. *State v. Richardson*, 314 Kan. 132, Syl. ¶ 4, 494 P.3d 1280 (2021). McNett's pro se motion clearly included an explanation for his late filing, even if it did not title the argument as "excusable neglect." Despite McNett's failure to correctly title his argument for untimely review, he clearly set forth the argument even without affording his motion the liberal construction applied to pro se pleadings and it is thus preserved for this court's review. See, e.g., *State v. Valdez*, 314 Kan. 310, 314, 498 P.3d 179 (2021).

The district court sentenced McNett on June 14, 2019. McNett did not file a direct appeal or a petition for a writ of certiorari to the United States Supreme Court, so the statutory time limit to appeal expired on June 28, 2019. See K.S.A. 22-3608(c). Therefore, McNett had one year from that date, until June 28, 2020, to file his postsentence motion to withdraw plea. K.S.A. 22-3210(e)(1). McNett filed the motion on April 6, 2023—almost three years past the filing deadline. Although McNett's filing deadline occurred during the COVID-19 pandemic, nothing in the Kansas Supreme Court's administrative orders suspending and reinstating statutes of limitations during that

5

time excuses McNett's three-year delay. See Kansas Supreme Court Administrative Order 2020-PR-016, effective March 18, 2020 (suspending "all statutes of limitations and statutory time standards or deadlines applying to the conduct or processing of judicial proceedings" until further order); see also Kansas Supreme Court Administrative Order 2021-PR-020, effective March 30, 2021 (lifting the suspension of most statutes of limitations, including the one established in K.S.A. 22-3210[e][1]).

McNett's failure to file the postsentence motion to withdraw his plea within the one-year timeframe means that he *must* establish excusable neglect to warrant review of the merits of his motion. K.S.A. 22-3210(e)(2); see *State v. Ward*, 317 Kan. 822, Syl., 539 P.3d 1042 (2023) ("An untimely motion to withdraw a plea is procedurally barred when the defendant does not meet the burden to show excusable neglect.").

"[N]eglect is not excusable unless there is some justification for an error beyond mere carelessness or ignorance of the law on the part of the litigant or his attorney." *Smith*, 315 Kan. 124, Syl. ¶ 3. This means that "excusable neglect 'implies something more than the unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind.'" *Smith*, 315 Kan. at 353 (quoting *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 65, 523 P.2d 351 [1974]). Additionally, mere ignorance of the law—including associated filing deadlines or conditions warranting plea withdrawal—does not constitute excusable neglect. See, e.g., *State v. Davisson*, 303 Kan. 1062, 1068, 370 P.3d 423 (2016) ("[I]gnorance of the law should not constitute excusable neglect for inmates or criminal defendants under K.S.A. 2015 Supp. 22–3210(e)(2).").

McNett alleges the State wrongly coerced him to enter the plea agreement through threats, which means he was aware of these alleged threats in March 2019—four years before his filing. Apparently McNett did not find these threats objectionable until he realized that his plea subjected him to lifetime—rather than 15 years—of postrelease KORA registration. However, McNett's filings provide contradictory dates for when he

6

became aware of the lifetime registration requirement. In the motion to withdraw his guilty plea, McNett asserts that he was informed he was subject to lifetime registration six months after his release from custody in November 2020, which would have been May 2021. But later in that same motion, McNett suggests he may have contacted his trial counsel closer to his November 2020 release date: "Now I set forth that I was released from prison Nov. 4 2020. I contacted [my trial counsel] about my ability to file anything to rectify this." However, in McNett's motion to reconsider and his appellate brief, he states that he became aware he was subject to lifetime registration in January 2021.

Even assuming that any of these dates would be an appropriate marker from which to begin the one-year time limit for filing, McNett did not file his motion until April 2023—well over a year from those dates. Therefore, his motion would *still* be exceedingly untimely even if the time limit ran from when he realized he would be subject to lifetime registration.

McNett contends his late filing should nevertheless be excused because he relied on his trial counsel's advice that there was no remedy. Therefore, according to McNett, he could only take action after learning of the lifetime registration and gaining access to legal research in Sedgwick County Jail in October 2022, which was within a year of the date he eventually filed his pro se motion. However, McNett's ignorance of the law— with or without legal advice—does not create excusable neglect for this late filing. *Smith*, 315 Kan. 124, Syl. ¶ 3. Moreover, McNett's motion offered no excuse for his failure to sooner investigate his ability to file the motion after discovering the lifetime registration requirement, other than that he simply did not seek it until his reincarceration. Despite his ignorance of the law, McNett carries the burden of demonstrating the reason he could not

have earlier discovered this legal process. *State v. Ellington*, 314 Kan. 260, 262, 496 P.3d 536 (2021). "[M]ere ignorance of the law is not a basis for equitable tolling of a statute of limitations, even for pro se prisoners." *State v. Fox*, 310 Kan. 939, 943, 453 P.3d 329 (2019).

CONCLUSION

McNett fails to establish excusable neglect for his more than three-year delay in filing a postsentence motion to withdraw his plea. The district court therefore did not err in summarily denying McNett's motion as untimely.

Affirmed.