NOT DESIGNATED FOR PUBLICATION

No. 128,538

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DALTON TERRELL WILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; BRETT A. WATSON, judge. Submitted without oral argument. Opinion filed October 3, 2025. Affirmed.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Carolyn A. Smith*, assistant deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER and ISHERWOOD, JJ.

PER CURIAM: Dalton Terrell Williams appeals from the district court's order requiring him to reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees in the amount of $775. On appeal, Williams claims that the district court required him to reimburse BIDS for attorney fees without explicitly considering his financial resources or the burden the payment of such fees would impose on him. Based on our review of the record on appeal, we find that the district court complied with the requirements of K.S.A. 22-4513(b). Thus, we affirm the district court's order requiring Williams to reimburse BIDS for the attorney fees incurred in representing him.

1

The parties are familiar with the underlying facts, and we will not repeat them in detail here. Significant to the limited issue presented on appeal, the State charged Williams with arson, possession of methamphetamine, and possession of drug paraphernalia. In turn, the district court appointed legal counsel to represent him. After negotiating a plea agreement, Williams pled guilty to one count of possession of methamphetamine, and the State dismissed the other two charges.

At the sentencing hearing, Williams requested that the district court waive any fines or fees, including attorney fees, because he was unemployed. The district court then inquired about his financial circumstances. In response, Williams admitted that he was physically capable of working and had been working full-time as a mechanic until about a year prior to sentencing. Williams also indicated that he was "kind of . . . homeless" and having difficulty finding another job because someone had taken his driver's license.

The district court also asked Williams about his assets and liabilities. Williams claimed that he had about $40,000 in an escrow account that he intended to use to buy land. However, Williams told the district court that he was not sure how to access the money in his escrow account. In addition, Williams represented that he believed that a debt owed to Envista Core Bank was in collections, but he was not sure of the amount. Finally, Williams informed the district court that he had 401K retirement accounts from his employment with Big O Tires and with Goodyear, but he was not sure how to access those accounts.

Specifically, the district court conducted the following colloquy with Williams in an attempt to determine his financial circumstances:

"THE COURT: Mr. Williams, I need to ask you some questions about your financial circumstances, because there are recommendations for you to pay costs and fees.

. . . .

"THE COURT: How old are you, sir?

"THE DEFENDANT: 30.

"THE COURT: Your attorney's indicated that you're not employed at this time[,] is that right?

"THE DEFENDANT: Correct.

"THE COURT: Are you physically capable of working?

"THE DEFENDANT: Yes.

"THE COURT: When is the last time you were employed?

"THE DEFENDANT: About a year ago, maybe. Yeah.

"THE COURT: Okay. And what did you do at that time?

"THE DEFENDANT: I was a mechanic at Firestone.

"THE COURT: Was that a full-time job?

"THE DEFENDANT: Yes.

"THE COURT: How much were you making on a full-time basis—or on a monthly basis, excuse me.

"THE DEFENDANT: It was by—I got paid by the job, so it was like $19.50 an hour.

"THE COURT: Okay. And so that was full time, though?

"THE DEFENDANT: Yeah.

"THE COURT: Like 40 hours per week?

"THE DEFENDANT: Yes.

"THE COURT: How have you supported yourself financially in the last year?

"THE DEFENDANT: Necessarily haven't. I've kind of been homeless.

"THE COURT: I'm sorry?

"THE DEFENDANT: I've been homeless really. So I just—my mom helps me out with giving me some food every now and then. But more or less, yeah, I'm trying to just get by really, trying to figure it out.

"THE COURT: Have you taken any efforts to find new employment?

"THE DEFENDANT: Yeah. It's hard to do without having a driver's license or even having a license like in front of me. Like, someone took my license, so I'm not too sure like where it is. I don't have money to get another one.

3

"So it's all just been trying to get everything back together pretty much. Get my life back together.

"THE COURT: I understand.

"How old did you say you were?

"THE DEFENDANT: 30.

"THE COURT: Okay. You are going to need employment in the future, I'm assuming. You're not independently wealthy?

"THE DEFENDANT: I mean—what do you mean by that?

"THE COURT: Do you own any assets like a house, a car, or a bank account with any savings?

"THE DEFENDANT: Possibility. Like I say, I don't have no means of looking into that, so I'm not too sure on that, honestly.

"THE COURT: You may own a house but you don't know?

"THE DEFENDANT: I do have a estate. I have an escrow account and all that. But like—I don't know—like I say, I don't know who to talk to to get into any of that.

"THE COURT: Okay. I don't quite understand. You have an escrow account that has the proceeds from a house in it, is that what you're saying?

"THE DEFENDANT: Yeah, I was purchasing land at one point, so—

"THE COURT: How much is in your escrow account?

"THE DEFENDANT: Well, the guy that I was paying, he actually passed away, is Jerry Whitmere. . . . And—yeah, but it was for 40,000, so—

"THE COURT: Well, if it's an escrow account for you to purchase land, I'm assuming it's your money that you put into the escrow account before you closed on the land; is that accurate?

"THE DEFENDANT: Yeah.

"THE COURT: Okay. But the person has passed away, so has that negated the sale of the land?

"THE DEFENDANT: I'm not sure what's going on with it. Like I say, I've been trying to figure a lot of things out myself in my financial life. You know what I mean. It's kind of—I didn't go to school for that.

"THE COURT: Yeah. So you might either have $40,000 that belongs to you or land in the value of $40,000?

"THE DEFENDANT: Yeah, correct.

"THE COURT: Is that correct?

4

"THE DEFENDANT: Yes.

"THE COURT: Do you have any financial liabilities like credit card debts, medical debts, child support arrearages or things of that kind?

"THE DEFENDANT: Not that I'm—well, actually I have some in collections, that's about it.

"THE COURT: What is in collections?

"THE DEFENDANT: It was an Envista Core Bank I think it was.

"THE COURT: That's what we would call consumer debt. About how much debt do you have there?

"THE DEFENDANT: I'm not too sure on that. Honestly, like I say, I don't know how to look up any of that, get access to any of that, so—

"THE COURT: Well, you're 30 now, Mr. Williams.

"THE DEFENDANT: Yeah.

"THE COURT: And so what I would recommend is that you take steps to ascertain what your assets are. You have credit card debt, you don't know anything about it. You may have $40,000 in land that belongs to you or cash that belongs to you. You don't seem to know that much about it. It strikes me as a little bit irresponsible.

"THE DEFENDANT: I've actually just worked my whole life so I didn't necessarily get into the financial. I just learned how to work really. So I didn't necessarily get into the banking or whatnot.

"THE COURT: Well most people work their whole life. When they go to purchase something like a house or land they can tell you where their money is or where their title is.

"THE DEFENDANT: Yeah.

"THE COURT: What I'm emphasizing to you is that this sentence you're about to go through, it might be a good opportunity for you to learn some basic life skills.

"THE DEFENDANT: Yeah.

"THE COURT: Like, you know, keep track of your $40,000 that might be floating around somewhere.

"THE DEFENDANT: Uh-huh.

"THE COURT: That's a rather substantial amount of money to simply lose track of.

"THE DEFENDANT: Yeah. I mean, I actually invested with one of my other jobs as well, but like I say, I don't know how to get ahold of them. 'Cause I used to work at Big O

Tire. So like I say, again, invested in a 401-K. I just don't know how to access any of that information.

"THE COURT: You believe from your prior employer you have some money in a 401-K?

"THE DEFENDANT: Yeah.

"THE COURT: Do you have any idea how much?

"THE DEFENDANT: No. Like I say, I was terminated from all these jobs that I had and so I mean, I can't get ahold of them and it's just kind of—like I say, I didn't get into any of that. I just invested for my future, really.

"THE COURT: How long were you working for that employer?

"THE DEFENDANT: I worked there for two and a half years.

"THE COURT: Okay. And so were you required to contribute to the 401-K every month?

"THE DEFENDANT: I just signed up for it and I'm pretty sure it was taken out of my check; along with Goodyear as well.

"THE COURT: Okay. Well, again, that might be another good example of taking some responsibility and learning where your assets are.

"THE DEFENDANT: Yeah.

"THE COURT: Because you might have, you know, a few thousand dollars in 401-K that belongs to you.

"THE DEFENDANT: Yeah.

"THE COURT: Rather than just turning your back on it, you might seize that asset. Because if you did, you could get a driver's license.

"THE DEFENDANT: Yes.

"THE COURT: And then you could get a job.

"THE DEFENDANT: Yes.

"THE COURT: Okay. Anything else about your financial circumstances that you would like to tell me?

"THE DEFENDANT: No."

After providing Williams with the opportunity of allocution, the district court sentenced Williams to an 11-month prison sentence but suspended the sentence and placed him on supervised probation for 12 months. Additionally, the district court

6

ordered Williams to reimburse $775 to BIDS for his attorney fees. In doing so, the district court explained: "It sound[s] like from what . . . you have told me you actually have access to substantial assets and I think [you] could easily pay these costs and fees while on probation. I've considered your financial circumstances and I do not believe they would impose an undue hardship upon you." In the alternative, the district court authorized community service to pay costs and fees, including the BIDS fee. So, the district court ordered Williams to either pay $149 a month towards his costs and fees per month or "perform $149 worth of community service" monthly while on probation.

Williams filed a timely notice of appeal.

ANALYSIS

The sole issue present on appeal is whether the district court failed to consider Williams' financial resources when ordering him to reimburse BIDS $775 in attorney fees, and whether it failed to consider the burden such payment would impose, as required by K.S.A. 22-4513(b). In response, the State contends that the record shows the district court properly considered Williams' financial resources when it assessed the BIDS attorney fees. We agree.

When reviewing a mixed question of fact and law, an appellate court applies a bifurcated review standard. The appellate court generally reviews the factual findings under the substantial competent evidence standard, disregarding any conflicting evidence or other inferences that might be drawn from the evidence. The conclusions of law based on those findings are subject to unlimited review. See *State v. Dooley*, 313 Kan. 815, 819, 491 P.3d 1250 (2021). To the extent this issue requires statutory interpretation, it is a question of law over which we exercise unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

7

Under K.S.A. 22-4513(a), a criminal defendant who is represented by appointed counsel and then convicted of a felony may be required to reimburse the State for some or all of the BIDS attorney fees. During sentencing hearings, district courts are required to inquire about a defendant's financial obligations, earning capacity, and other factors related to their ability to reimburse the BIDS attorney fees. K.S.A. 22-4513(b); *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006).

When assessing the amount and method of payment of these fees, a district court must consider "the financial resources of the defendant and the nature of the burden that payment of such sum will impose." K.S.A. 22-4513(b). Moreover, a district court must state how those factors have been weighed in the court's decision. 281 Kan. at 546. If the district court finds that reimbursement of the attorney fees will impose a manifest hardship on the defendant, it may waive payment of all or part of the fees or modify the method of payment. K.S.A. 22-4513(b).

Here, Williams argues that in imposing the fees, the district court relied on "unproven factual representations." In support of his argument, Williams cites *State v. Shields*, 315 Kan. 131, 142, 504 P.3d 1061 (2022), and *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019). But neither of these cases involves the reimbursement of BIDs attorney fees or discusses K.S.A. 22-4513. Consequently, we find that they do not provide support for Williams' position.

A review of the record reveals that the district court engaged in an extensive colloquy with Williams concerning his financial resources and the potential burden that reimbursing the State for his BIDS attorney fees would impose. The district court also explained its decision on the record and pointed to the money Williams represented that he had in an escrow account and in one or more 401K accounts. Moreover, the district court confirmed that Williams had the ability to work and had experience as a mechanic. Furthermore, in light of Williams' representations regarding his current financial status,

the district court ordered the reimbursement to be made either by making monthly payments or by way of performing community service.

We find no requirement in K.S.A. 22-4513(b) that the financial representations provided by a defendant to the district court at sentencing must be verified or otherwise proven. Rather, on its face, K.S.A. 22-4513(b) requires district courts to "take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." This is what the district court did in this case.

Here, the district court made an extensive inquiry into Williams' financial obligations, earning capacity, potential assets, and ability to pay. A review of the record confirms that after making an extensive inquiry into Williams' financial circumstances, the district court explained:  "I've considered your financial circumstances and I do not believe [the BIDS fees] would impose an undue hardship upon you." In addition, as discussed above, the district court provided Williams with an alternative way to reimburse his BIDS attorney fees by performing community service if he was unable to pay. Under these circumstances, we conclude that the district court adequately complied with the requirements of K.S.A. 22-4513(b). Accordingly, we affirm the district court's order regarding the reimbursement of BIDS attorney fees.

Affirmed.