NOT DESIGNATED FOR PUBLICATION

No. 128,548

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL E. EGBERT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed February 6, 2026. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Ethan Knocke*, legal intern, *Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL and ATCHESON, JJ.

PER CURIAM: This case returns to us from remand, and we must decide whether the district court correctly bypassed intermediate sentencing sanctions when it sent Michael E. Egbert to prison after revoking his probation.

Originally, the district court had imposed a 31-month prison sentence for his burglary and theft convictions. And as a dispositional departure, the court suspended the prison sentence and ordered Egbert to serve 24 months' probation. After Egbert

1

committed numerous bond and probation violations, the district court revoked Egbert's probation and ordered him to serve his prison sentence.

Egbert appealed, and a panel of this court reversed and remanded after finding the district court did not make sufficient particularized findings when it invoked the public safety and welfare exception under K.S.A. 2015 Supp. 22-3716(c)(9). *State v. Egbert*, No. 125,790, 2024 WL 1954174, at *4 (Kan. App. 2024) (unpublished opinion).

On remand from that successful appeal, Egbert asked the district court to reinstate his probation because "he is not a threat to public safety, and that it is in his interest, his best interest, to be placed back on probation." While in prison, Egbert completed his GED; attended training at Wichita State University; had a guaranteed job in the community if he was placed on probation; and had a support system of friends, family, and mentors.

This time, the district court once again invoked the public welfare exception, bypassed intermediate sanctions, and sent Egbert to prison. This time, the court made several findings.

The district court noted his criminal history score was B, Special Sentencing Rule Number 27 applied, and his criminal history included 40 entries starting in 1986. It also noted that the court had granted him a downward dispositional departure. The court found that Egbert was not new to the system and continued to commit crimes. The court pointed out that he committed these crimes while he was bonded for a pending probation violation hearing.

In fairness to Egbert, the district court noted he had made attempts at bettering himself and approved of his strong support system. But the court then pointed out all of

that was present when he committed these crimes. This failure concerned the court, raising doubts about Egbert's ability to be successful on probation.

The district court then pointed to the case history. Egbert had five probation violation warrants issued. The record of the case revealed two pretrial services warrants over a four-year period. Then, the court set out specific dates where Egbert failed to report to his supervising officer.

After that, the district court set out Egbert's list of new crimes.

"While on bond, the defendant committed several new crimes, including the offense of aggravated assault with a firearm as alleged in WPD Report 19C038265. Assaultive behavior as alleged in the same report. Driving without a license in that same report. That on or about September 23, 2021, the defendant committed the offense of driving while suspended as alleged [by the] Sumner County Sheriff's Office. That on January 27, 2022, the defendant committed the offense of interference with law enforcement as alleged in Sedgwick County Sheriff's Report 22S000795. On that same date, the defendant committed the offense of fleeing or attempting to elude. In that same report on that same date, the defendant committed the offense of driving while suspended as alleged in that same report."

The court then referred to Egbert's drug usage:

"The defendant has continued to use drugs as follows: One, an admittance to methamphetamine on January 15, 2019, and February 3, 2019. On July 12, 2019, the defendant submitted a urine sample that tested positive for methamphetamine. On July 12, 2019, the defendant signed a statement of admittance to using methamphetamine on or about July 8, 2019.

"The defendant's continued use of methamphetamine while on probation and while on bond in this case reflects that he will not succeed if the Court elected to impose

3

an intermediate sanction and give him another chance on probation. He is a danger to himself and others, i.e., a danger to the public, the community, and himself."

In its conclusion, the court pulled all these points together.

"The defendant has demonstrated independently and in combination with his failure to appear, ongoing new crimes [while] on bond, including offenses such as assault with a firearm, possession of a firearm, fleeing or attempting to elude, interference with law enforcement, driving while suspended, and the defendant's continued drug use, that he will not succeed if the Court elected to impose an intermediate sanction and give him another chance on probation. That he is a danger to himself and others, i.e. a danger to the public, the community, and himself. The Court is making public safety and welfare findings at this time. Public safety and the community will be at risk, as well as the reinstatement would not be beneficial to . . . both the community and for you, Mr. Egbert."

Based on these findings, the district court bypassed intermediate sanctions and imposed Egbert's original sentence of 31 months' imprisonment.

*A statute and several cases guide our consideration of this issue.*

*Why and how probations are revoked are controlled by law.*

Under K.S.A. 2015 Supp. 22-3716(c)(9):

"The court may revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction of an offender pursuant to subsection (c)(1)(E) without having previously imposed a sanction pursuant to subsection (c)(1)(B), (c)(1)(C) or (c)(1)(D) if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction."

4

To be set forth with particularity, a finding "'must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.'" *State v. Dooley*, 308 Kan. 641, 652, 423 P.3d 469 (2018). Because the statute requires the court to set forth with particularity the reason for finding this exception applies, "'an implicit determination is not enough . . . .'" 308 Kan. at 652.

*The district court's findings here are sufficient.*

The district court sufficiently set out its findings when it invoked the public welfare exception. To be set forth with particularity a finding "'must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.'" *Dooley*, 308 Kan. at 652. Because the statute requires the court to set forth with particularity the reason for finding this exception applies, "'an implicit determination is not enough.'" 308 Kan. at 652. To rely on this exception, the district court must explicitly explain how the safety of the members of the public will be jeopardized if the offender remains on probation or how the offender's welfare will not be served by imposition of an intermediate sanction. *State v. McFeeters*, 52 Kan. App. 2d 45, 49, 362 P.3d 603 (2015).

In *State v. Cole*, No. 122,052, 2020 WL 5996433, at *8 (Kan. App. 2020) (unpublished opinion), another panel of this court had a similar approach to this problem. In *Cole*, the district court explained how "Cole possessed a loaded handgun and had a problem with continued methamphetamine use." 2020 WL 5996433, at *8. The panel affirmed the district court, finding: "The district court could have been more expansive in describing the danger Cole posed but the underlying facts were known to all of the participants, and the connection between those facts and the district court's detailed reasoning was unmistakable." 2020 WL 5996433, at *8.

Similarly, here, the district court made an extensive explanation of the facts and detailed how Egbert continued to use methamphetamine and posed a danger through his actions such as possessing a firearm, assaulting officers with the firearm, and driving while suspended.

The district court explicitly explained why the safety of the public and how Egbert's welfare would not be served with imposition of an intermediate sanction. The district court made specific findings about how Egbert's continued drug use, failure to report, and commission of crimes—including aggravated assault and driving while suspended—posed a danger to both the public and to Egbert himself. The district court did not make implicit findings; rather, it explained how each type of violation—drug use, Egbert's failure to report, and commission of crimes—indicated Egbert would not be successful on probation and posed a danger to the public.

On appeal, Egbert argues that the district court abused its discretion in revoking his probation, given his recent progress and his support system in the community. A district court abuses its discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Jennings v. Shauck*, 318 Kan. 711, 714, 547 P.3d 524 (2024); *State v. Shields*, 315 Kan. 131, 139, 504 P.3d 1061 (2022). Here, as the party asserting an abuse of judicial discretion, Egbert bears the burden of proving the point. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Egbert does not contend the district court misunderstood the facts or misapplied the law. He argues no other district court could have come to the same conclusion. We disagree. The very reasons the district court set out in detail warranting the revocation of Egbert's probation without an intermediate sanction also convince us other district courts

would have ordered Egbert to serve his prison sentence rather than continuing him on probation.

We hold that the district court did not abuse its discretion in revoking Egbert's probation.

Affirmed.