(96 P.3d 662)

No. 90,964

STATE OF KANSAS, *Appellee,* v. MICHAEL JAMES POST, *Appellant.*

Opinion filed August 27, 2004. 

*Heather Cessna,* assistant appellate defender, for appellant.

*Daryl E. Hawkins,* assistant county attorney, *Kristie Hildebrand,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Michael Post appeals from the trial court's denial of his motion to allow visitation with C.M. during his period of incarceration. C.M. is the mother of the victim and was a witness in Post's underlying conviction. Post was convicted of aggravated indecent liberties with a child, attempted aggravated indecent solicitation of a child, and felony obstruction of official duty. At the sentencing hearing, the trial court ordered that Post serve 73 months in prison and that he have no contact with the victim, witnesses, and C.M. The sole issue on appeal is whether the trial court has statutory authority under K.S.A. 2003 Supp. 21-4603d to impose a no contact order for the duration of Post's term of incar-

ceration. We find that the trial court acted within its statutory authority. Accordingly, we affirm the trial court's ruling.

Post's convictions in this case stem from events that occurred during October 2000 when Post performed oral sex on 10-year-old T.M. (dob 12/12/89), while T.M. was in bed. T.M.'s brother, C.R. (dob 07/24/91), was in the same bed as T.M. and witnessed Post's head going up and down near T.M.'s penis. C.R. eventually went downstairs and got their 18-year-old sister Taylor who came upstairs and talked with T.M. and C.R. about what had occurred. C.R. later went downstairs and informed their mother, C.M., who was sleeping. Apparently, at the time of these events, Post was living with C.M. and her family.

T.M. was taken to Abilene Memorial Hospital where T.M.'s underwear was collected and swabs were taken from T.M.'s penis. Testing revealed that saliva was present in the swabs taken from T.M.'s penis. In addition, the DNA profile from the biological material on the swab was consistent with the DNA profile of Post but not consistent with the DNA profile of T.M.

Post was initially charged with aggravated criminal sodomy. At the preliminary hearing, Officer Jerry Davis indicated that C.M. had not been cooperative in the police investigation of Post. Davis revealed that when he had made arrangements to obtain a saliva sample from T.M., C.M. told him that she had contacted someone with legal knowledge who told her that she did not have to bring T.M. in for the test. Davis further revealed that he spoke with C.M. one time while she was visiting Post in jail. At that time, C.M. did not understand why Post was charged with sodomy. C.M. told Davis that Post did not molest her son. Davis testified that it was obvious that C.M. did not appreciate the fact that Post was being charged in this case.

While Post was awaiting trial, he was allowed out on bond and ordered to have no contact with the victim or witnesses. During October 2001, however, Officer Davis submitted an affidavit which showed that Post had violated his bond conditions. Davis had received information that Post was living in T.M. and C.R.'s home. Davis conducted a surveillance of the residence and saw Post being

dropped off there and also saw Post, C.M., and T.M. together. The trial court temporarily revoked Post's bond.

During October 2001, Post entered into a plea agreement with the State where he pled guilty to aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3). In addition, Post entered a no contest plea under *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970), to attempted aggravated indecent solicitation of a child in violation of K.S.A. 21-3301 and 21-3511, and also felony obstruction of official duty in violation of K.S.A. 21-3808. In exchange, the State agreed to dismiss the remaining charges with prejudice, to file no additional charges arising out of the same transgression, and to recommend that Post be sentenced to 72 months in prison. The State also agreed to recommend that Post be reinstated on his bond upon the entry of his plea as long as he submitted to bond supervision with the court services office and have no contact with the child victim or child witness. At the plea hearing, the trial court accepted the plea but denied the request that Post be released on bond.

At a November 2001 hearing, the trial court sentenced Post to 73 months in prison. In addition, the trial court ordered Post to have no contact with C.M., T.M., or C.R. The trial court went on to state, "I'm severing the codependency problem. You may have contact with them at some other time in life, but right now they're not going to visit you. Period." The trial court also ordered Post to have no contact with any children under the age of 18. These orders were included in an "order of probation" form and attached to the journal entry of judgment.

During February 2003, Post moved to allow visits from C.M. during his incarceration. Post asserted that he would not have any contact with T.M., C.R., or any other child under the age of 18. At the hearing on this motion, Post referred to C.M. as his common-law wife.

The State advised the trial court that C.M. had taken T.M. and C.R. to visit Post in prison but such visits had been stopped. The State argued that the primary concern was how the continued contact would affect T.M. and C.R. and that the no contact order was appropriate in this case.

At the conclusion of the hearing, the trial court denied the motion, stating:

"[T]he Court's going to protect this victim. And letting the natural mother—and I make no finding whether she's a common-law wife—letting the natural mother have visitation and then [possibly] delivering messages back and forth, isn't going to happen, and the motion is denied.

"Um, when you commit these types of felonies, and you go to prison, you lose rights. And those are [some] of the rights that he's lost."

On appeal, the sole issue is whether the trial court had statutory authority and thus jurisdiction to impose the no contact order on Post's term of incarceration.

Essentially, this court must determine whether the no contact order imposed during Post's incarceration constituted an illegal sentence. An illegal sentence is "a sentence imposed by a court without jurisdiction, a sentence which does not conform to the statutory provision, either in character or the term of punishment authorized, or a sentence which is ambiguous with respect to the time and manner in which it is to be served. [Citation omitted.]" *State v. Lofton*, 272 Kan. 216, 217, 32 P.3d 711 (2001). Under K.S.A. 22-3504(1), an appellate court may correct an illegal sentence at any time. *State v. Sisk*, 266 Kan. 41, 43, 966 P.2d 671 (1998). "The determination of whether a criminal sentence is illegal is a question of law subject to unlimited review. [Citation omitted.]" *State v. Huff*, 277 Kan. 195, 199, 83 P.3d 206 (2004).

The question of whether the trial court imposed an illegal sentence by ordering the no contact condition during Post's period of incarceration requires us to interpret K.S.A. 2003 Supp. 21-4603d, which sets forth the authorized dispositions of crimes committed on or after July 1, 1993. "Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. [Citation omitted.]" *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

In interpreting K.S.A. 2003 Supp. 21-4603d, we bear in mind the familiar rules of statutory construction:

"The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be as-

certained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.]" *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

" 'In construing statutes, legislative intent is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted.' [Citation omitted.]" *CPI Qualified Plan Consultants, Inc. v. Kansas Dept. of Human Resources*, 272 Kan. 1288, 1293, 38 P.3d 666 (2002).

"Criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. The rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. [Citation omitted.]" *State v. McGill*, 271 Kan. 150, 154, 22 P.3d 597 (2001).

With this statutory interpretation framework in mind, we turn now to the language of K.S.A. 2003 Supp. 21-4603d. The relevant portion of that statute provides:

"(a) Whenever any person has been found guilty of a crime, the court may adjudge any of the following:

(1) Commit the defendant to the custody of the secretary of corrections if the current crime of conviction is a felony and the sentence presumes imprisonment, or the sentence imposed is a dispositional departure to imprisonment; or, if confinement is for a misdemeanor, to jail for the term provided by law;

. . . .

(3) release the defendant on probation if the current crime of conviction and criminal history fall within a presumptive nonprison category or through a departure for substantial and compelling reasons *subject to such conditions as the court may deem appropriate*.

. . . .

(11) impose any appropriate combination of (1), (2), (3), (4), (5), (6), (7), (8), (9) and (10)." (Emphasis added.)

Important to an interpretation of this statute, K.S.A. 21-4601 states:

"This article shall be *liberally construed* to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous

offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, fine or assignment to a community correctional services program whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law." (Emphasis added.)

Under the unique facts of this case, the trial court was able to impose the no contact order during Post's incarceration by combining K.S.A. 2003 Supp. 21-4603d(a)(1) with K.S.A. 2003 Supp. 21-4603d(a)(3). Under K.S.A. 2003 Supp. 21-4603d(a)(3), the trial court can release a defendant on probation "subject to such conditions as the court may deem appropriate." Although Post's sentence was incarceration and not probation in this case, K.S.A. 2003 Supp. 21-4603d(a)(11) allows a trial court to impose any appropriate combination of (1) and (3). As a result, the trial court had the authority to combine incarceration with the no contact order that it entered in this case.

We wish to emphasize that our holding is confined to the particular facts of this case. By the time of the sentencing hearing, the trial court was aware of several facts which indicated that measures needed to be taken in order to protect both T.M. and C.R. Specifically, Post had been living with C.M. and her family when he committed the sexual acts on T.M. At the preliminary hearing, Officer Davis' testimony revealed that C.M. was uncooperative in the investigation and did not appreciate the fact that Post was being charged in this case. In addition, while Post was awaiting trial on the charges, he violated the trial court's order to have no contact with T.M. and C.R. In fact, Davis received information that Post was living in their home. Davis also saw Post with C.M. and T.M. during this time. It is obvious that the trial court's decision to impose the no contact order during Post's term of incarceration was to protect T.M. and C.R. from Post.

After hearing these facts, the trial court could not simply ignore the information but, rather, was correct in looking after the interests of T.M. and C.R. by imposing the no contact order. At the hearing on the motion to allow visitation with C.M., the trial court heard additional information that C.M. had visited Post in prison

and brought T.M. with her. This information only showed that the trial court's decision to include C.M. within the no contact order was necessary for the protection of T.M. and C.R. The policy of the law is to protect the interests of children "who are considered incapable of looking after their own affairs, to protect them from their own folly and improvidence, and to prevent adults from taking advantage of them." 42 Am. Jur. 2d, Infants § 36. Based on the public policy concerns relating to the protection of children combined with the liberal construction that we are required to give K.S.A. 2003 Supp. 21-4603d, we find that the trial court's decision to impose the no contact order during Post's term of incarceration was proper under the facts of this case.

To hold otherwise in this case would allow the trial court to place a no contact order on Post while he is on probation but not while he is incarcerated. Thus, T.M. and C.R. could be protected from contact with Post while he is on probation but not while he is incarcerated. Such an interpretation of K.S.A. 2003 Supp. 21-4603d would lead to an absurd result. See *City of Dodge City v. Wetzel*, 267 Kan. 402, Syl. ¶ 2, 986 P.2d 353 (1999) ("Statutes are to be construed to avoid unreasonable results.").

In reaching this decision, we note this court's decision in *State v. Chilcote*, 7 Kan. App. 2d 685, 647 P.2d 1349 (1982), where this court analyzed a combination provision under the then current version of K.S.A. 21-4603(2)(e) (Ensley 1981). K.S.A. 2003 Supp. 21-4603 now only authorizes the disposition for crimes committed before July 1, 1993. In sentencing the defendant in *Chilcote*, the trial court combined incarceration with an order of restitution. Restitution was only authorized under K.S.A. 21-4603(2)(c) which provided for release on probation subject to restitution. Although K.S.A. 21-4603(2)(e) provided that the trial court could "impose any appropriate combination of (a), (b), (c), and (d)," this court determined that only entire subsections could be combined to sentence a defendant. 7 Kan. App. 2d at 689-90. In making this determination, this court stated:

"In applying 21-4603(2)(e), a trial court may only impose sentences which are combinations of entire subsections. The use of the word 'appropriate' implies that the combination of penalties under the statute should be harmonious. Thus the

trial court may not impose imprisonment, which mandates incarceration, with either probation or suspension of sentence, because to do so would be to decree mutually exclusive penalties. As we construe the statute, restitution may only be ordered in conjunction with probation or suspended sentence. It follows that incarceration coupled with restitution is not an 'appropriate combination' under subsection (e)." 7 Kan. App. 2d at 690.

As noted previously, K.S.A. 2003 Supp. 21-4603 only applies to crimes that were committed before July 1, 1993. In addition, the current sentencing statute that applies to crimes committed on or after July 1, 1993, gives the trial court explicit authority to impose an order of restitution along with incarceration. See K.S.A. 2003 Supp. 21-4603d(b)(1).

*Chilcote* was cited in *Puckett v. Bruce*, 276 Kan. 59, 73 P.3d 736 (2003). In that case, the defendant committed his crime during January 2001 and, therefore, was sentenced under K.S.A. 2002 Supp. 21-4603d. The trial court ordered that Puckett be incarcerated and also required him to pay restitution. Although K.S.A. 2002 Supp. 21-4603d(b)(1) authorized the trial court to order restitution in combination with incarceration, the defendant argued that he could not be required to pay restitution while he was incarcerated. The defendant based his arguments on K.S.A. 2002 Supp. 21-4603. Citing *Chilcote*, our Supreme Court noted that under 21-4603, a defendant may not be ordered to pay restitution and sentenced to prison at the same time. Our Supreme Court further noted, however, that Puckett was sentenced under K.S.A. 2002 Supp. 21-4603d. 276 Kan. at 59-62. Our Supreme Court went on to state: "Puckett's arguments and authority cited under K.S.A. 2002 Supp. 21-4603 have no application to this case." 276 Kan. at 62.

*Puckett* calls into question the application of this court's reasoning in *Chilcote* to K.S.A. 2003 Supp. 21-4603d. As discussed above, Post was sentenced under 21-4603d, and the unique facts of this case required a liberal construction of this statute. We find that K.S.A. 2003 Supp. 21-4603d(a)(11) gave the trial court authority to impose the no contact order in combination with a sentence of incarceration.

Affirmed.