IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 125,681
126,069

STATE OF KANSAS,
*Appellee,*

v.

MIA MARIE COLLINS,
*Appellant.*

SYLLABUS BY THE COURT

There are three essential elements of a *Brady* violation claim: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice. See *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Appeal from Sedgwick District Court; TYLER J. ROUSH, judge. Submitted without oral argument December 15, 2023. Opinion filed September 13, 2024. Affirmed in part and dismissed in part.

*Sam S. Kepfield*, of Hutchinson, was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: In May 2019, Mia Marie Collins attempted to flee from police while driving a stolen vehicle through downtown Wichita. As a result of the chase, Collins

1

struck another vehicle, killing two people and injuring three others. She was initially charged with two counts of felony murder, two alternative counts of fleeing or attempting to elude an officer, three counts of aggravated battery, and single counts of possession of methamphetamine and driving while suspended. Collins ultimately agreed to plead guilty to two counts of felony murder, one count of fleeing or attempting to elude an officer, and three counts of aggravated battery. The remaining charges were dismissed per the plea agreement.

In the plea agreement, the State recommended hard 25 life sentences for the two felony-murder counts, and the low grid sentence for the remaining four counts. The State recommended that all sentences run concurrent, except for Count 5—the aggravated battery of victim J.W., who suffered a traumatic brain injury. The State, relying in part on J.W.'s lawyer's statements, recommended that Collins serve this 38-month sentence consecutively. The plea agreement explicitly informed Collins that she retained the right to argue for any other legal sentence before the district court. The agreement also stated that the district court had discretion to reject the plea agreement's sentencing recommendations and impose its own lawful sentence.

The day after Collins signed the plea agreement, the State sent defense counsel a news article stating that J.W. had settled a civil lawsuit against the Wichita Police Department (WPD). The article described how J.W. had been awarded an undisclosed settlement and reported J.W.'s statements blaming her injuries on the WPD—not on Collins.

Collins then filed a motion to withdraw her plea. Essentially, she claimed that had she known the information contained in the article—which she contends the State had a duty to share with her before the plea agreement—she would not have agreed to the terms of the plea agreement concerning Count 5 and therefore her plea was not knowingly and voluntarily made. Even though the record is clear that the State did not have the

2

information concerning the settlement when Collins signed the plea agreement, she argued the State had a duty to know. She added that had the parties had the information, the State would have recommended that the 38-month sentence for Count 5 run concurrent as well. She alleged that the State's failure to disclose this settlement information amounted to a violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (requiring that prosecutors disclose evidence favorable to the accused if that evidence is material to either guilt or punishment, regardless of whether the prosecution acted in good faith).

The district court held a hearing on Collins' motion. At that hearing, the defense stipulated to the specific facts presented in the State's response to Collins' motion to dismiss—including the fact that J.W.'s attorney had spoken with the State's attorney and informed him that a settlement in the J.W. civil suit against WPD was "imminent." No further details concerning the settlement were provided. The stipulation further agreed that the State had shared this information with the defense prior to Collins' entry of her plea. Additionally, the State provided a text message thread between the prosecution and the defense in which the lawyers discussed the possibility of running Count 5 concurrent, and the State explained that it intended to hold firm to running Count 5 consecutive.

The district court held that whether a *Brady* violation occurred and whether good cause existed for a withdrawal of plea was not a "close call" in this case. The court held that because the State was not a party to the civil suit against WPD it could not be charged with knowledge of the settlement agreement. The district court followed the State's recommendation in the plea agreement, acknowledging that it had the flexibility to choose any legal sentence it deemed appropriate and included its own independent reasons for ordering Collins to serve Count 5's sentence consecutively.

3

Collins now appeals, reprising the arguments she made below. Jurisdiction is proper under K.S.A. 22-3601(b)(3)-(4) for the first-degree murder charge, both as a crime where the maximum sentence of life imprisonment has been imposed and as an off-grid crime.

*Standard of Review*

We generally review the denial of a motion to withdraw a plea for abuse of discretion. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). An abuse of discretion indicates that no reasonable person could agree with the decision of the trial court. See *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Crosby*, 312 Kan. 630, 635, 479 P.3d 167 (2021).

"A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 22-3210(d)(1). When determining whether a defendant has demonstrated good cause to withdraw their plea, a district court generally looks to the following three factors from *Edgar*:  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020) (citing *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 [2006]).

4

These factors are not applied mechanically to the exclusion of other factors. *Fritz*, 299 Kan. at 154. These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court "should not ignore other factors that might exist in a particular case." *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016); see *Frazier*, 311 Kan. at 382 (applying contract principles to good cause showing).

In her initial motion to withdraw plea, Collins argued that her situation fell under the second *Edgar* factor—that she was misled by the State during plea negotiations. In her appellate brief, counsel suggests that Collins' situation is not a perfect fit for any single *Edgar* factor, but rather fits somewhere between the second and third factor. Under either factor, the core argument is the same: had Collins been aware of J.W.'s sentiments and the WPD settlement before signing a plea agreement, she believes that she would have been able to use those facts as leverage to convince the State to recommend Count 5 run concurrent. She argues that the State's failure to disclose this information, intentionally or unintentionally, constituted a *Brady* violation which as a matter of law qualifies as good cause under the *Edgar* factors.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that pleas must be knowingly and voluntarily made. *Brady v. United States*, 397 U.S. 742, 745, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). *Brady v. Maryland* requires that prosecutors disclose evidence favorable to the accused if that evidence is material to "'guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *State v. Warrior*, 294 Kan. 484, 506, 277 P.3d 1111 (2012) (quoting *Brady*, 373 U.S. at 87).

> "There are three components or essential elements of a *Brady* violation claim:
> (1) The evidence at issue must be favorable to the accused, either because it is
> exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by

the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice.

"Under the test for materiality governing all categories of *Brady* violations, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Warrior*, 294 Kan. 484, Syl. ¶¶ 10, 11.

We review a trial court's determination as to the existence of a *Brady* violation under a split standard of review. First, a trial court's ultimate decision concerning whether a *Brady* violation occurred is a legal question which we review de novo. When answering that question, however, we must give deference to a trial court's findings of fact. *United States v. Turner,* 674 F.3d 420, 428 (5th Cir. 2012) ("[Courts] consider alleged *Brady* violations de novo. This de novo review 'must proceed with deference to the factual findings underlying the district court's decision.'").

We need not consider all three of *Brady*'s essential elements because the second is determinative and, as the district court noted, it does not present a "close call." There is no evidence in the record showing the State willfully or inadvertently suppressed evidence. Both parties agree that the State did not intentionally suppress or withhold any evidence. And both acknowledge that the prosecutor did not actually know about the settlement prior to Collins' plea entry.

The State had communicated with J.W.'s attorney about all matters related to Collins' plea agreement. That attorney acknowledged he did not share J.W.'s feelings with the State. All parties acknowledge that the State freely shared with the defense what information it had. Communications between the State's attorney and defense counsel indicated that the State communicated that a settlement may be imminent, but that the State was committed to running Count 5 consecutive.

6

The district court found that there were many legitimate reasons why J.W.'s attorney would decline to share information about J.W. with the State during the pending civil suit against the Wichita police. The district court found that to "impute [the] lack of information to the State, . . . is not fair"; that the State cannot be expected to "read between the lines or know what is coming out or even expect that they get that information"; and that even if the State had forcibly tried to get that information, it would have been unable to. In sum, the district court found that "with regard to the *Brady* issue," the State's lack of knowledge regarding the civil suit made this "a nonissue." We agree.

Without a *Brady* violation, Collins' motion to withdraw failed and it cannot be resuscitated on appeal. To drive the point home, we note that on the point of contention, the district court judge stated his own independent reasons for ordering Count 5 to run consecutive:

> "In fact, I think there's rationale to run all of the counts consecutively. This—despite what other people may have done, focusing on Ms. Collins' behavior, which is the focus of a criminal sentencing hearing, Ms. Collins, after having a history of being given the opportunity to rehabilitate herself on probation, found herself in a stolen vehicle, and when confronted by the police, from all accounts, immediately took off and drove extremely fast through downtown Wichita. That put everybody's life in danger. Unfortunately, those risks came to fruition.
>
> "But there is a difference between people who, for whatever reason, choose to use drugs or alcohol and people who choose to use drugs or alcohol and then involve the rest of the community in their own risky behavior. And that is the offensive part that only Ms. Collins is responsible for.
>
> "Unfortunately, it resulted in this terrible tragedy. But while two people died and a number of others were injured, we're only running two of the counts consecutively— I'm only running two of the counts consecutively. And that represents the credit for Ms.

7

Collins taking responsibility for her actions, that represents the, in my opinion, good-faith negotiation between the prosecution and the defense. And while that may have been or not have been the sentence that I would have suggested had I been involved in the negotiations, I do find that the sentence agreed upon in the plea agreement is a fair sentence and takes into account mitigation factors cited by the defense, as well as the factors from the prosecution about why they believe that more than one count should be punished in this case. So for those reasons, that is the Court's sentence."

Given all this, the district court did not abuse its discretion in denying Collins' motion to withdraw her plea for a lack of good cause.

*Arguments Relating to Jail Time Credit Are Moot*

On a final note, this case is before the court as two consolidated cases. One being the appeal related to Collins' motion to withdraw her plea (No. 125,681), the other involving a motion for jail time credit (No. 126,069).

Following her conviction, Collins filed a motion to correct an illegal sentence, arguing that the sentence in this case should run concurrent with a previous traffic case, 19 TR 1743. Collins argued that the judge in the traffic case had ordered that sentence to run concurrent with the present case, and that the failure to acknowledge this deprived her of six months' jail time credit. Though the district court initially denied her motion to correct an illegal sentence, she later filed a motion to correct/adjust jail time and was awarded the six months' credit on August 22, 2022. Therefore, arguments regarding appeal No. 126,069 are moot. *State v. Roat*, 311 Kan. 581, 584, 466 P.3d 439 (2020).

Affirmed in part and dismissed in part.