NOT DESIGNATED FOR PUBLICATION

No. 127,486

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEQUALYN A. SHAFFER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed October 31, 2025. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM: After Dequalyn A. Shaffer's conviction of rape was overturned on appeal, Shaffer pled to a reduced charge of indecent solicitation of a child. The court sentenced Shaffer to serve 46 months in prison, followed by lifetime postrelease supervision. Because Shaffer had accumulated significant jail credit while the case was pending, Shaffer only served 90 days in prison before being released on lifetime postrelease supervision. Upon starting his term of postrelease supervision, Shaffer learned he would not be allowed to have contact with his minor children. As a result,

1

Shaffer filed various pro se motions, including a request to withdraw his plea. The Sedgwick County District Court denied the motion, finding no manifest injustice.

On appeal, Shaffer first alleges that the district court abused its discretion in denying Shaffer's motion to withdraw his no-contest plea. Shaffer also argues that the district court violated his due process rights by making judicial findings to enhance his sentence with regard to his lifetime term of postrelease supervision pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

With regard to the first issue, we find that while the district court erred in finding the advice provided by Shaffer's attorney was not deficient, Shaffer is unable to demonstrate prejudice, and therefore the error is not reversible.

As to the second issue, we hold that Shaffer failed to preserve his argument that the district court violated his due process rights related to his lifetime term of postrelease supervision under *Apprendi*. We decline to consider the issue.

Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2013, the State charged Shaffer with the rape of a 15-year-old girl. Shaffer waived his right to a jury trial, and the case proceeded to a bench trial. In addition to the alleged victim's testimony about what occurred, the State presented evidence that Shaffer could not be excluded as the contributor of male DNA found during a sexual abuse examination of the alleged victim. Shaffer testified in his own defense and admitted to having sex with the alleged victim, claiming that she enticed him to engage in sexual intercourse with her. During cross-examination, Shaffer also admitted that he was 24 years old at the time of trial and 21 or 22 years old when the sexual intercourse with

the 15-year-old girl occurred. Shaffer claimed that the alleged victim told him she was 18 years of age and tricked him into having sexual intercourse with her. The court convicted Shaffer of rape and sentenced him to serve 620 months in prison followed by lifetime postrelease supervision.

On direct appeal, this court reversed Shaffer's conviction based on the district judge's refusal to grant Shaffer's motion for recusal and remanded the case for a new trial. The court found no reversible error in any of Shaffer's other appellate contentions. See *State v. Shaffer*, No. 114,174, 2016 WL 4414614 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1329 (2017).

After remand, the parties prepared for a jury trial on an amended complaint that added a charge of aggravated indecent liberties with a child as an alternative charge to rape. Shaffer ultimately negotiated a plea agreement with the State. Shaffer agreed to plead no contest to a lesser charge of indecent solicitation of a child. Shaffer signed acknowledgment of rights and plea agreement forms. The acknowledgment included a statement that Shaffer was 31 years of age. He also acknowledged that the crime to which he was pleading no contest carried a prison term of 17-46 months, a maximum fine of $100,000, and lifetime postrelease supervision. The plea agreement also contained an acknowledgment that Shaffer was 18 years of age or older at the time of the offense and that the conviction carried lifetime postrelease supervision.

At the plea hearing, Shaffer again admitted that he was 31 years of age. The State recited the terms of the plea agreement, which included Shaffer's admission to being 18 years of age or older at the time of the offense and Shaffer's acknowledgment that the offense carried lifetime postrelease supervision. Shaffer personally stated that the State's recitation of the plea agreement coincided with his understanding. He affirmed that he had read and understood both written forms related to the plea. The court restated the applicable penalties associated with the plea, including lifetime postrelease supervision.

3

Thereafter, Shaffer entered a no-contest plea to one count of indecent solicitation of a child. Based on the State's factual proffer, the court accepted the plea.

The court sentenced Shaffer to serve 46 months in prison, followed by lifetime postrelease supervision. But, because Shaffer had accrued 1,111 days of jail time credit, he was required to serve only 90 days in prison before being released.

Approximately 11 months after sentencing and after he had begun serving postrelease supervision, Shaffer filed several pro se motions seeking to withdraw his plea and challenging the imposition of lifetime postrelease supervision. Shaffer ultimately withdrew his motion to correct an illegal sentence on the basis that lifetime postrelease supervision was unconstitutional. Nevertheless, at the hearing on the motion to withdraw Shaffer's plea, the court denied the motion to correct an illegal sentence.

At the hearing, Shaffer testified that he was coerced into accepting a plea by misinformation from his counsel, Richard Ney, about being released from supervision after a few years and about Shaffer's ability to have contact with his children during supervision. Ney also testified and disputed Shaffer's characterization of his advice on the duration of postrelease supervision but acknowledged that he advised Shaffer that he did not believe the State could legally prevent Shaffer from having contact with his children as a condition of postrelease supervision.

The district court found that Shaffer had failed to establish manifest injustice warranting withdrawal of his plea. The court specifically adopted Ney's testimony regarding his advice on the length of postrelease supervision. The court found no deficient representation by Ney in advising Shaffer that the conditions of postrelease supervision would not prevent him having contact with his children. The court concluded that the advice was reasonable based on Ney's vast criminal defense experience with postrelease supervision.

Shaffer timely appeals.

ANALYSIS

I. *Did the district court abuse its discretion in denying Shaffer's motion to withdraw his plea?*

*Standard of Review*

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 22-3210(d)(2). The Kansas Supreme Court has defined manifest injustice in this context to mean something "'obviously unfair'" or "'shocking to the conscience.'" *State v. Shields*, 315 Kan. 131, 140, 504 P.3d 1061 (2022). Shaffer bears the burden of establishing that a manifest injustice warrants setting aside his plea. *State v. Grant*, 320 Kan. 835, 838, 572 P.3d 788 (2025); *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). This court reviews the district court's decision for an abuse of discretion. Judicial discretion is abused when the court makes a decision that is arbitrary, fanciful, or unreasonable or that is based on an error of law or fact. *State v. Collins*, 319 Kan. 439, 441, 555 P.3d 693 (2024).

*Discussion*

In assessing the district court's ruling on a motion to withdraw a plea, a reviewing court examines three factors, commonly known as the *Edgar* factors. See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). First, the court considers the quality of the representation. Second, the court examines the circumstances surrounding the plea that suggest the defendant might have been misled, coerced, mistreated, or unfairly taken advantage of. And third, the court considers whether the plea was fairly and understandingly made. *Shields*, 315 Kan. at 139. These factors direct the inquiry, but a

5

court should consider any factor bearing on the defendant's knowledge and voluntariness. *Shields*, 315 Kan. at 139-40; *State v. Bricker*, 292 Kan. 239, 245, 252 P.3d 118 (2011).

Shaffer challenges the knowing and voluntary nature of his plea based on the quality of his legal representation. A postsentence motion to withdraw a plea based on inadequate legal representation must meet the constitutional standard of ineffective assistance of counsel set by *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. Peters*, 319 Kan. 492, 498, 555 P.3d 1134 (2024). The standard has two parts. The first requires the defendant to establish that counsel's performance was objectively unreasonable within the applicable circumstances. The second requires the defendant to establish prejudice from counsel's deficient representation. *Shields*, 315 Kan. at 141. In establishing a deficiency in the legal representation, a party claiming ineffective assistance of counsel must overcome a strong presumption that counsel's conduct fell within a broad range of reasonable professional assistance. In evaluating counsel's conduct or advice, an appellate court must make every effort to eliminate the distorting effects of hindsight by evaluating the conduct from counsel's perspective at the time. *Peters*, 319 Kan. at 498.

Once a party has established deficient representation, he or she must then convince the reviewing court that the deficient representation prejudiced the outcome of his or her legal proceeding. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022). Within the context of a plea withdrawal, a party establishes prejudice if he or she convinces the court of a reasonable probability that, but for the deficient performance by counsel, he or she would have insisted on going to trial instead of entering the plea. A reasonable probability is objective information sufficient to undermine confidence in the outcome. *Shields*, 315 Kan. at 141; *Johnson*, 307 Kan. at 447. The standard is not a subjective one; a criminal defendant seeking to withdraw a plea based on ineffective assistance of counsel must establish a *reasonable* probability that he or she would have insisted on going to trial. See *Baker v. State*, 57 Kan. App. 2d 561, 572, 457 P.3d 183 (2019).

6

At the hearing to withdraw his plea, Shaffer identified two ways that he contended Ney provided deficient representation before Shaffer entered his plea. He contended that Ney informed him that he could petition to be released from postrelease supervision after five years of supervision and that Ney informed him that the conditions of postrelease supervision would not preclude Shaffer's contact with his minor children.

On appeal, Shaffer limits his argument about Ney's deficient representation to the advice about conditions of postrelease supervision precluding contact with Shaffer's children. Accordingly, any disagreement with the district court's ruling on Ney's advice about release from supervision has been waived or abandoned. *State v. Ballard*, 320 Kan. 269, 275, 566 P.3d 1092 (2025) (quoting *State v. Stuart*, 319 Kan. 633, 639, 556 P.3d 872 [2024]).

*Deficient Representation*

At the hearing on Shaffer's motion to withdraw his plea, Ney recalled the discussion he had with Shaffer on Shaffer's ability to have contact with his children while on postrelease supervision:

"Q. What was your discussion?
"A. Well, we probably talked about a number of things. But if we want to go to the heart of this, Mr. Shaffer—Dequalyn asked me—he was concerned about having no contact, because it was a sex offense, with his children. And I said as clearly as I could that in my experience parole or post-release did not separate people from their infant children because they had sex with a 14 or 15-year-old—I think a 15-year-old—and that had been my experience. This [was] not a case of an individual having molested tiny children. This was an encounter with someone who was just below the age of consent. And I said I did not believe that that would be a problem, and it turned out I was wrong.
"Q. Okay. Did you tell him that it was—that the conditions were set up by post-release?

"A. Well, to the extent that they can be, yes. But I didn't say I had any belief that there was a policy in place or anything like that that would bar him arbitrarily from being with his children. And I did not believe, at the time, that they would.

"Q. Based upon your experience?

"A. Yes.

"Q. But you don't have any control over the conditions that post-release imposes?

"A. Well, no. But as a lawyer, one tries to prepare their client for what they can expect. I mean, I think conditions have to be reasonable related to the crime and not be additional punishment without reason.

"Q. When he was released on post-release supervision, did he contact you at—

"A. Yes, he did.

"Q.—and ask for intervention?

"A. I'm sorry?

"Q. And ask for your help in intervening with these conditions?

"A. Well, he certainly asked about this. And I was not as surprised as he was, but I was certainly shocked that they were saying he could not live with his one-year-old child because of a relationship with a 15-year-old. So I contacted parole, eventually, after some effort and talked to a supervisor and asked for what policies they had. You know, is there a policy written that anyone with a sex offense can't live with a child? I knew that not to be the case, or certainly didn't believe it was the case. And basically they let me know that the policy, in simple terms, were what they said it was. In other words, they could do what they wanted in these kinds of cases."

After the condition of postrelease at issue was applied, Ney advised Shaffer

"to get a lawyer and to take this to court because one cannot have this be arbitrarily under the law. I didn't think this was consistent with what they had done in the past and it certainly wasn't consistent with the needs of this case. So a judge could, not in the sense of an order, but have a post—have the Department of Corrections sued and proceed in that manner."

The district court concluded that Ney had not provided deficient representation to Shaffer on this point because Ney's advice was based on his vast experience as a criminal

8

defense attorney. But this conclusion is not based on the proper measure. While experience in a particular area of law may minimize the probability that a lawyer would provide inaccurate legal advice to a client, experience alone does not render the legal advice sound.

> "To set aside a guilty plea because ineffective assistance of counsel has rendered the plea involuntary, the defendant must show that counsel's performance fell below the standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' *Hill v. Lockhart,* 474 U.S. 52, 58-59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985) (adapting the test from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

> "Defense counsel has an obligation to advise a defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant. *Weigel v. State,* 207 Kan. 614, 615, 485 P.2d 1347 (1971). A mere inaccurate prediction by defense counsel, however, does not constitute ineffective assistance of counsel. See *McMann v. Richardson*, 397 U.S. 759, 770, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970)." *State v. Soloman*, 257 Kan. 212, 223, 891 P.2d 407 (1995).

In *Solomon*, the defendant argued that he was misled as to the sentence he would receive and that he understood he would get a minimum sentence. Solomon asserted his trial counsel had misled him and had urged him to plead rather than go to trial. His attorney countered that he had advised his client that he "hoped" Solomon would receive a sentence of somewhere between 3-10 years, and that he would recommend that sentence to the court. 257 Kan. at 217. In fact, the minimum sentence fell between 5 and 20 years, and that was the sentence recommended to the court.

> "The only arguments made at the hearing on the motion to withdraw the plea were based upon the defendant's assertions he thought he would get a minimum sentence of no more than 3 to 10 years, that his counsel led him to believe he would get such a

9

sentence, and counsel was in error in advising the defendant the minimum was 3 to 10 years." 257 Kan. at 217.

Our Supreme Court found that the attorney's representation was not deficient.

> "When the record is viewed in its entirety, McCarville's advice that the defendant was more likely to receive something less than the maximum if he pled no contest was simply an inaccurate prediction. In addition, McCarville's erroneous statement to the defendant as to the minimum sentence was not a major or controlling factor in the defendant's decision to plead nolo contendere." 257 Kan. at 225.

Here, it is a closer call. Shaffer specifically asked prior to taking the plea whether he would be prohibited from seeing his minor children because of his plea. Determining whether Ney's conduct in this situation fell below the standard of reasonableness proves troublesome, as there appears to be no Kansas case specifically addressing whether a criminal defendant convicted of a child sex crime can be prohibited from having contact with his minor children as a condition of postrelease supervision.

Several principles extracted from caselaw applying conditions of release or parole suggest that conditioning a criminal defendant's postrelease supervision on having no contact with his or her own children may be improper.

In considering an Eighth Amendment challenge to lifetime postrelease supervision, the Kansas Supreme Court recognized legitimate penological goals, including deterrence, incapacitation, and rehabilitation, justifying the Legislature's imposition of lifetime postrelease supervision on individuals convicted of child sex crimes. *State v. Mossman*, 294 Kan. 901, 911, 281 P.3d 153 (2012). Implicit in the court's reasoning is that the supervision serves a legitimate penological goal. Accordingly, the conditions of release presumably would have to be related to a legitimate penological

10

goal. *Mossman*, however, did not address the validity of specific conditions of lifetime postrelease supervision but merely examined the legitimacy of the period of supervision.

In *State v. Post*, 32 Kan. App. 2d 1222, 1227-28, 96 P.3d 662 (2004), this court upheld a no-contact order on a criminal defendant while he served his prison term after the defendant was convicted of sex crimes. The no-contact order extended to the victim and to another child living in the household as the victim. This court noted that the order was necessary to protect the children under the specific circumstances of the case. 32 Kan. App. 2d at 1227. *Post* is distinguishable from the current case in significant respects. Unlike in Shaffer's case, the no-contact order in Post related to the victim of the sexual abuse and a sibling of the victim living in the same household. Here, Shaffer is precluded from having contact with a non-victim who is unrelated to the victim and is not living in the same household as the victim.

Moreover, in *Post*, the victim and sibling were not related to the criminal defendant, though he had been living in the household when the sex offenses occurred. Accordingly, the criminal defendant had no legal right to a relationship with the children subject to the no-contact order. Here, Shaffer is precluded by the condition on postrelease supervision from having contact with his own children.

A natural parent who has assumed parental responsibilities has a fundamental constitutional right to a parental relationship with his or her child protected by the United States and Kansas Constitutions. *In re Adoption of C.L*, 308 Kan. 1268, 1279, 427 P.3d 951 (2018). This right may be severed by the State only upon clear and convincing proof of parental unfitness. *Santosky v. Kramer*, 455 U.S. 745, 753-54, 769, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 705-06, 187 P.3d 594 (2008). By imposing a condition of *lifetime* postrelease supervision that precludes contact with any minors, including Shaffer's children, the State has effectively severed Shaffer's parental relationship with his children until they reach the age of majority. The consequences at

11

stake in Shaffer's case, therefore, are significantly distinguishable from the no-contact order imposed in *Post*.

When a condition of parole was imposed on a parolee that barred his contact with a child, a federal district court in New York held, in a collateral challenge to the condition, that the State was required to support the condition with individualized justification that the defendant posed a threat to the child under a strict scrutiny analysis. See *Doe v. Lima*, 270 F. Supp. 3d 684, 703 (S.D.N.Y. 2017). Under the circumstances presented in this case, it is not clear that the State could devise individualized justification that Shaffer posed a threat to either of his children.

The legality of the condition of Shaffer's postrelease supervision is not before this court in this appeal. But the issue is relevant to determining whether Shaffer should be permitted to withdraw from his plea. Ney might ultimately be proven correct that such conditions are improper, but, until they are ruled improper, such conditions rest with the discretion of the Department of Corrections. While Ney told Shaffer that the Department of Corrections established the conditions of postrelease supervision, he suggested to Shaffer that based on his prior experiences, the Department of Corrections would not prevent Shaffer from having contact with his minor children under the circumstances of Shaffer's case.

Even if Ney provided accurate legal information—and the Department of Corrections is imposing an illegal condition on Shaffer's postrelease supervision—at least for now the information provided by Ney was factually inaccurate. Reasonable legal advice prompted by Shaffer's question would have related the unsettled nature of the law. Ney could provide his opinion about the propriety of such a condition, but in order to provide complete advice to Shaffer, Ney should also have acknowledged that the question had not been decided in Kansas. His failure to do so eliminated the opportunity

12

to correct Ney's misapprehension of the relevant circumstances. Consequently, his advice to Shaffer, while perhaps not incorrect, was incomplete.

This is a unique situation in that Ney's comments to Shaffer—that the condition of postrelease supervision is illegal—may very well be correct. But at the time Ney gave the advice, the advice was still deficient in that it left Shaffer without all the information he needed to make an informed decision to enter a plea. Consequently, the district court erred in concluding that Ney's representation was not deficient.

*Prejudice*

To establish prejudice, a party must convince the court of a reasonable probability that, but for the deficient performance by counsel, he or she would have insisted on going to trial instead of entering the plea. A reasonable probability is objective information sufficient to undermine confidence in the outcome. *Shields*, 315 Kan. at 141; *Johnson*, 307 Kan. at 447. The determination that a defendant would have elected to go to trial is an objective one, not based on the subjective statements of the criminal defendant. See *Shields*, 315 Kan. at 141; *Baker*, 57 Kan. App. 2d at 572.

At the hearing on his motion to withdraw plea, Shaffer testified that he would have insisted on going to trial if he had known he would not be allowed to live with his children as a condition of postrelease supervision. But under the circumstances of this case, we find there is no reasonable probability Shaffer would have gone to trial for several reasons.

By way of history, Shaffer was convicted at his first trial in this case—a bench trial—of rape. He was sentenced to 620 months in prison. He successfully appealed, and in response, the State amended the charging document to charge Shaffer with both rape and the alternative count of aggravated indecent liberties with a child, severity level 1 and

13

3 person felonies, respectively. After some negotiation, Shaffer pled to an amended charge of indecent solicitation of a child, a level 6 person felony. Shaffer was sentenced to 46 months in prison. By the time Shaffer was sentenced, he had spent so much time in jail that only 90 days remained on his sentence.

The Kansas Sentencing Guidelines illustrate the startling differences in potential sentences in this case and supports our finding that there was no reasonable probability Shaffer would have taken his case to trial.

Shaffer's criminal history score was A. By pleading to indecent solicitation of a child, a level 6 felony, Shaffer was sentenced to only 46 months and only had 90 days left to serve on that sentence at the time of his sentencing.

Had Shaffer taken his case to trial and been convicted of the severity level 1 rape charge, he faced a sentence as long as 653 months—which was certainly possible considering that at his sentencing for his first conviction, later overturned, Shaffer in fact received a sentence of 620 months. Had Shaffer taken his case to trial and been convicted of the severity level 3 aggravated indecent liberties with a child charge, he would have faced a sentence of up to 247 months. By taking his case to trial, Shaffer would have risked serving additional decades in prison rather than the 90 days he ultimately served. It is objectively unreasonable to think that Shaffer would have taken this risk.

The evidence against Shaffer was also significant. Because Shaffer's DNA was found in the swabs taken during the victim's sexual assault examination and because of the victim's testimony, the probability of conviction at trial for rape or aggravated indecent liberties with a child was substantial. And while not the subject of this appeal, the district court also ruled that Shaffer's admission from his first trial that he had sex with the 15-year-old victim would be admissible at his second trial. All of these facts

14

make it highly improbable that but for Ney's deficient advice, Shaffer would have taken his case to trial.

The possibility of facing additional convictions with greater sentences, and overwhelming evidence of guilt, are objective factors to consider in determining the likelihood of whether Shaffer would have taken his case to trial:

> "Based on these factual findings, which are supported by the record, Adams has not proven to a reasonable probability she would have insisted on going to trial absent the errors committed by her counsel. As the district court found, in addition to her desire to protect her daughter, Adams faced overwhelming evidence of guilt, including her own *Mirandized* confession that she and her daughter engaged in sexual acts in Dodge City, testimony from her daughter, and potential testimony from Noble. Given the weight of this evidence, we conclude it is unlikely Adams would have risked a trial. Additionally, had she proceeded to trial, this evidence likely would have resulted in convictions for additional crimes, including another crime under Jessica's Law, and a much greater sentence. These facts dispel the possibility that, but for Eckelman's errors, Adams would have proceeded to trial. See *State v. Bricker*, 292 Kan. 239, 255, 252 P.3d 118 (2011)." *State v. Adams*, 297 Kan. 665, 672, 304 P.3d 311 (2013).

Finally, given the strong chance the State will impose the condition that Shaffer avoid having contact with his minor children on any lifetime postrelease supervision attached to a child sex conviction, the condition will likely be imposed should Shaffer withdraw his no-contest plea and be convicted of rape or aggravated indecent liberties with a child after retrial. This further demonstrates the unlikelihood of Shaffer taking his case to trial.

To summarize, it is Shaffer's burden to demonstrate that a reasonable probability exists that, but for Ney's errors, he would have insisted on going to trial. But the potential for a much greater sentence, the significant evidence against Shaffer, and the fact the postrelease condition would have likely attached to any child sex conviction against

15

Shaffer all weigh against Shaffer's assertions that had he been effectively counseled he would have risked a trial.

While the district court erred in finding that Ney's representation was not deficient, because Shaffer has failed to demonstrate prejudice, that error is not reversible.

II. *Did the district court violate Shaffer's due process rights by using a judicial finding to enhance his sentence?*

Shaffer next challenges the district court's imposition of lifetime postrelease supervision as a violation of his due process rights as interpreted by *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

*Preservation*

"We generally do not address legal theories raised for the first time on appeal, even those of constitutional dimension." *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024) (citing *State v. Gutierrez-Fuentes*, 315 Kan. 341, 347, 508 P.3d 378 [2022]).

> "There are three exceptions to the rule: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason." *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

It is true that Kansas appellate courts have considered an *Apprendi* challenge for the first time on appeal. See, e.g., *State v. Campbell*, 307 Kan. 130, 136, 407 P.3d 240 (2017) (considering *Apprendi* challenge for first time on appeal even though controlling precedent existed). But Kansas courts have also applied our preservation rules to decline to consider *Apprendi* claims raised for the first time on appeal. The preservation requirement "ensures that trial courts have the first opportunity to address and resolve

16

issues, promotes judicial efficiency, and prevents unfair surprises to the opposing party." *State v. Jelinek*, 66 Kan. App. 2d __, 2025 WL 2630095, at *4 (2025).

Shaffer concedes that his *Apprendi* challenge was not presented in the district court. He contends that this court may address the issue for the first time on appeal (1) because his argument is a newly asserted theory involving only a question of law arising on proved or admitted facts that is determinative of the case, and (2) because consideration of the new theory is necessary to serve the ends of justice or prevent the denial of a fundamental right.

Although Shaffer has requested the application of these two exceptions, appellate review remains prudential. "Nevertheless, our review is prudential, and even if an exception may apply, we may still decline to review the question." *Mendez*, 319 Kan. at 730-31 (citing *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 [2020]).

Constitutional due process claims under *Apprendi* have been brought in Kansas courts for decades. *Apprendi* provides that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. An early Kansas case considering this principle was *State v. Gould*, 271 Kan. 394, 405-06, 23 P.3d 801 (2001). In *Gould,* the district court made findings as to certain aggravating factors which increased Gould's sentence beyond the statutory maximum. Applying *Apprendi*, our Supreme Court held that the "district court, rather than the jury, made these findings as required by K.S.A. 21-4716(a). *Apprendi* requires that such findings be made by the jury beyond a reasonable doubt. Because Kansas law authorizing upward departure sentences directly contravenes this requirement, the law is unconstitutional." 271 Kan. at 412. Kansas courts have repeatedly considered the application of *Apprendi*, and the availability of *Apprendi* arguments to litigants is well-documented.

17

Given the unique opportunity Shaffer had to contest the imposition of lifetime postrelease supervision, this case presents circumstances in which the court is unwilling to exercise its discretion in favor of review. In this instance, Shaffer challenged the conditions of his lifetime postrelease supervision in district court through his motion to withdraw his plea. Shaffer fails to make any compelling argument that either exception to the general preservation rules applies to his case. In fact, Shaffer's argument as to why this court should set aside our preservation rules in favor of an exception is contained in a single sentence: "This Court may address the issue under either exception."

As our panel in *Jelinek* pointed out, the preservation requirement "ensures that trial courts have the first opportunity to address and resolve issues, promotes judicial efficiency, and prevents unfair surprises to the opposing party." *Jelinek*, 66 Kan. App. 2d __, 2025 WL 2630095, at *4. The present case is a situation where Shaffer acknowledged his age in a plea agreement and confirmed during his plea hearing that he understood he was subject to lifetime postrelease supervision. He had also previously testified at his first trial that he was 24 years old at the time of trial and 21 or 22 years old when the sexual intercourse with the 15-year-old girl occurred. The district court intended to admit those statements at Shaffer's second trial as indicated by its ruling. Had Shaffer raised the *Apprendi* issue at the district court level, the State would have had the opportunity to respond. Waiting until this appeal to raise this issue constitutes unfair surprise to the opposing party.

This conviction resulted from a plea. Shaffer failed to raise this issue during his plea hearing. He also failed to raise it at his sentencing, and again failed to raise it within his motion to withdraw plea—a motion that specifically targeted his postrelease supervision. We find Shaffer has failed to preserve his constitutional challenge to the lifetime postrelease supervision term and decline to consider this unpreserved issue.

Affirmed.